# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED NOBLE, | ) 1:10-cv-02049 GSA |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Fred Noble ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 8 & 9.)

1

## FACTS AND PRIOR PROCEEDINGS[23]

Plaintiff filed an application for disability insurance and supplemental security income benefits, alleging disability beginning June 1, 2008. *See* AR 151-158. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 87-99. ALJ John Cusker held a hearing, and issued an order denying benefits on June 9, 2010, finding Plaintiff was not disabled. AR 8-16. On September 3, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Cusker held a hearing on May 7, 2010, in Fresno, California. Plaintiff appeared and testified. He was represented by attorney Melissa Proudian. Vocational Expert ("VE") Jose L. Chaparro also testified. AR 17-57.

Plaintiff was forty-six years old on the date of the hearing. AR 22. He is no longer married and no longer drives because he cannot operate the pedals as a result of his condition. AR 23. He does not have a driver's license because "child support took [his] driver's license." AR 23. Plaintiff rode the bus in order to attend the hearing. AR 24.

When asked whether he had taken any medication that morning, Plaintiff replied in the affirmative and added that he took "a little extra actually." AR 25. Earlier that day, Plaintiff took both his morning and afternoon thirty-milligram dose of Oxycontin in order to "function and get out [] in the city." AR 26. His current medications include Oxycontin, Hydrocodone, Gabapentin, Proventil and Wellbutrin. AR 25. When he was asked whether he had consumed any alcohol that day, Plaintiff replied that he had consumed "an awful lot of liquor" the previous evening, consuming six beers before passing out. AR 26-27. Asked whether he has a problem with alcohol, Plaintiff replied "[n]ot really." He has never had to "go to classes," nor has he been

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff has previously applied for Social Security benefits; most recently he received an unfavorable decision on August 25, 2006, by ALJ James E. Ross. *See* AR 70-81.

1    "in trouble for it." AR 28.  Later however, following an inquiry from the ALJ, Plaintiff admitted

2    that he was convicted of a DUI in Arizona about ten years prior.  AR 29.

3         Plaintiff completed the eleventh grade.  He learned to read and write, but testified that he

4    can no longer read the newspaper because his eyes are bad.  AR 27.  He claims "it just kills [him]

5    to read anything these days . . . [e]verything is blurry."  AR 27.  He cannot read a paragraph

6    without getting a headache.  AR 27-28.  Plaintiff has never received vocational training.  AR 29.

7         Plaintiff last worked about two years ago.  AR 30.  His past work includes pool

8    maintenance and building swimming pools.  AR 29-30.  About fifteen years prior, he worked at a

9    golf course.  He started out as a "bag boy"[4] and worked his way up to a supervisory position.  AR

10   32.  More recently he had been waiting tables at a seafood restaurant.  He was let go after he "got

11   a hernia."  AR 30.  When he was asked to indicate the time period during which he was

12   employed at the restaurant, Plaintiff indicated it would have been the first four months of 2008.

13   AR 31.  Plaintiff testified that he did not work in 2009, but did offer that he received

14   unemployment benefits after dishonestly indicating that he was capable and ready to work.  AR

15   30-31.

16        Plaintiff is unable to work because he cannot concentrate as a result of the pain.  AR 35.

17   He has sciatica and it "feels like a truck is running over" his leg constantly.  AR 34.  He is "pretty

18   much helpless."  AR 35.  Other than medication for pain, Plaintiff tried physical therapy but it

19   made his condition worse and after his insurance expired, the "physical therapy people let [him]

20   go."  AR 35.  Plaintiff believes "something is really wrong in [his] spine," because when he

21   coughs or sneezes he "sees stars," sweats and blacks out.  AR 38.  He suffers from "drop foot"

22   and it causes his right foot to be numb from the ankle down.  AR 38, 44.  Above the ankle,

23   Plaintiff feels the pain up into his back.  AR 44.  He cannot walk up a flight of stairs.  AR 45.  It

24   is also difficult to walk on uneven surfaces.  AR 45.  He has fallen trying to get into the shower

25   and on other occasions.  AR 45.  Although a psychiatric examination occurred in May 2009,

26   Plaintiff does not believe he has any mental problems.  AR 39.

27

28

---

[4]At a golf course, a "bag boy" carries a golfer's clubs from his or her car to the golf cart.

3

The cane Plaintiff uses was prescribed by his primary care doctor at Community Medical Center. AR 36. The doctor prescribes medications and has ordered various lab tests and an MRI. Plaintiff sees the doctor about once a month. AR 36-37. Plaintiff denied that he was told by his physician that he would have to quit smoking before becoming a surgical candidate. AR 37. Plaintiff uses his cane to pick things up that have fallen on the ground. He does not reach overhead with his arms. AR 46.

When asked how far he could walk, Plaintiff indicated he had tried to walk "the other day" and was able to get about a half a block, but he had to "sit down a few times." AR 37. He can stand about five to ten minutes without interruption. AR 37-38. He does not want to stand or sit, he would rather lie down. AR 38. The longest he can sit without interruption is about ten minutes. AR 38-39. He is "[b]arely" able to stoop or squat. AR 38. He cannot lift anything heavier than a gallon of milk. AR 38. Plaintiff estimated he spends about ninety percent of the time period between 6 a.m. and 6 p.m. lying down. AR 43.

With regard to personal grooming, Plaintiff indicated he showers about once a week. AR 40. It is difficult to shower because he cannot easily bend over. AR 41. Plaintiff can put his left shoe on, but has difficulty with his right. AR 41.

Plaintiff is currently homeless; he either stays on the floor at friend's home or at a church. AR 40. He has been homeless "since about January." AR 43. A typical day involves trying to make it to the park about a block away and lying on the grass "all day until the police kick [him] out." AR 41-42. If he cannot make it to the park, he sits, stands or lies down at the bus stop across the street. AR 42. Even when staying at his friend's home, Plaintiff does not do any chores or cook. AR 42. Prior to becoming homeless, Plaintiff had a girlfriend who did all his cooking and cleaning. She also helped him bathe. AR 43.

After some clarification, VE Chaparro indicated that Plaintiff's past relevant work includes: caddy, medium and unskilled, DOT[5] 341.677-010; golf club manager, sedentary and

---

[5]"DOT" refers to the Dictionary of Occupational Titles.

1   skilled with an SVP[6] of 6, DOT 187.167-114; swimming pool installer, very heavy and skilled

2   with an SVP of eight, DOT 869-463-010; swimming pool servicer, medium and semi-skilled

3   with an SVP of four, DOT 891.684-018; and waiter, light and semi-skilled with an SVP of three,

4   DOT 311.477-030.  AR 48-51.

5        The VE was asked to consider a hypothetical worker of Plaintiff's age, education and

6   work history, whom can lift and carry twenty pounds occasionally and ten pounds frequently, can

7   stand and walk with the use of a walker and can sit without restriction, but whom cannot stoop,

8   crouch or crawl.  AR 51-52.  VE Chaparro indicated such an individual would be unable to

9   perform Plaintiff's past work.  AR 54.  Nevertheless, the VE indicated the individual could

10  perform unskilled sedentary work.  AR 54.

11       In a second hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's

12  age, education and work history, whom can lift and carry ten pounds occasionally and less than

13  ten pounds frequently, can stand or walk for at least six hours in an eight-hour day using a cane,

14  can sit for six hours in an eight-hour day with normal breaks, but cannot push or pull with the

15  right lower extremity, and should avoid unprotected heights and walking on uneven terrain.  AR

16  54-55.  The VE indicated such an individual could not perform Plaintiff' past work; however, the

17  individual could perform unskilled sedentary work.  AR 55.

18       In a third hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's

19  age, education and work history, whom can walk no more than one half block, can stand for five

20  to ten minutes at one time and sit for no more than ten minutes at a time, can lift weight no

21  greater than a gallon of milk, must alternate sitting and standing accordingly, and can concentrate

22  no more than five minutes at a time.  AR 55-56.  VE Chaparro indicated such an individual could

23  perform neither Plaintiff's past work nor any other work.  AR 56.

24  **Medical Record**

25       The entire medical record was reviewed by the Court.  AR 235-307.  The medical

26  evidence will be referenced below as necessary to this Court's decision.

27

28

----

[6]"SVP" refers to Specific Vocational Preparation.

1    **ALJ's Findings**

2         Using the Social Security Administration's five-step sequential evaluation process, the

3    ALJ determined that Plaintiff did not meet the disability standard.  AR 8-16.

4         More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

5    activity since June 1, 2008.  AR 10.  Further, the ALJ identified degenerative disc disease of the

6    lumbosacral spine, status post surgery, as a severe impairment.  AR 10-11.  Nonetheless, the ALJ

7    determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed

8    impairments.  AR 11.

9         Based on his review of the entire record, the ALJ determined that Plaintiff has the

10   residual functional capacity ("RFC") to lift and carry no more than ten pounds, can walk and

11   stand for two hours, as well as sit for six hours, in an eight-hour workday, with the ability to

12   occasionally climb, balance, stoop, kneel, crouch and crawl.  He is precluded from pushing or

13   pulling foot pedals with his right lower extremity, must avoid concentrated exposure to

14   machinery and heights, and must be permitted to use a cane for ambulation.  AR 11-15.

15        Next, the ALJ determined that Plaintiff was unable to perform his past relevant work.

16   Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ

17   determined there were jobs that existed in significant numbers in the national economy that

18   Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the entire world of

19   unskilled sedentary work.  Therefore, the ALJ found Plaintiff was not disabled.  AR 15-16.

20                                  **SCOPE OF REVIEW**

21        Congress has provided a limited scope of judicial review of the Commissioner's decision

22   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

23   this Court must determine whether the decision of the Commissioner is supported by substantial

24   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

25   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

26   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

27   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

28   401.  The record as a whole must be considered, weighing both the evidence that supports and

                                           6

1  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

2  995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

3  apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

4  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

5  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

6  substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

7  Cir. 1987).

8                                                    **REVIEW**

9          In order to qualify for benefits, a claimant must establish that he is unable to engage in

10  substantial gainful activity due to a medically determinable physical or mental impairment which

11  has lasted or can be expected to last for a continuous period of not less than twelve months. 42

12  U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

13  such severity that he is not only unable to do her previous work, but cannot, considering his age,

14  education, and work experience, engage in any other kind of substantial gainful work which

15  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

16  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

17  Cir. 1990).

18          Here, Plaintiff argues that the ALJ erred by in finding that he did not meet or equal listing

19  1.04A. Further, Plaintiff argues the ALJ's credibility analysis is not supported by substantial

20  evidence.

21                                                **DISCUSSION**

22  ***Listing 1.04A***

23          Plaintiff contends the ALJ's "cursory listing determination" is not supported by

24  substantial evidence as the record establishes that Plaintiff meets Listing 1.04A. (Doc. 11 at 5-7.)

25          The listings of impairments describe impairments "that are considered severe enough to

26  prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a). Most of these

27  impairments are permanent or expected to result in death. *Id.* For all other impairments, the

28  evidence must show that the impairment has lasted or is expected to last for a continuous period

of at least twelve months.  *Id.*  If a claimant's impairment meets or equals a listed impairment, he

or she will be found disabled at step three without further inquiry.  20 C.F.R. § 416.920(d).

      To demonstrate that an impairment matches a listed impairment, the claimant must show

that the impairment meets all of the medical criteria in a Listing.  *Sullivan v. Zebley*, 493 U.S.

521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how

severely, does not qualify."  *Id.*  To "equal" a listed impairment, a claimant must establish

symptoms, signs and laboratory findings "at least equal in severity and duration" to the

characteristics of a relevant listed impairment.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.

1999); 20 C.F.R. §§ 404.1526(a), 416.926(a).  Under the law of this circuit, "[i]t is unnecessary

to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every

different section of the listing of impairments."  *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th

Cir. 1990).

      The relevant listing provides as follows:

> **1.04 Disorders of the spine** (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root (including the
> cauda equina) or the spinal cord. With:
>     A. Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back, positive straight-leg
> raising test (sitting and supine) . . ..

      Here, Plaintiff contends the ALJ's finding that he does not meet Listing 1.04A "[f]lies in

the face of the treatment records that reveal evidence of nerve root compression characterized by

neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, sensory loss

and positive straight leg raising."  (Doc. 11 at 6.)  Plaintiff cites to a number of specific pages in

the administrative record in support of his assertion.

      After noting the possibility that Plaintiff may meet Listing 1.04 during the hearing (AR

39), the ALJ asked Plaintiff's counsel to obtain the recent MRI evidence, keeping the record

open until receipt of same.  AR 39-40, 56-57. Following review of the MRI (AR 306-307), the

ALJ noted as follows:

A MRI of the claimant's lumbar spine was performed in March 2010. This showed post-operative changes of the 4-5 level with laminectomy, as well as other postoperative changes; minimal disc bulge at the 2-3 level extending to the neural foramina, with mild spinal canal stenosis; and diffuse disc bulge at the 3-4 level flattening the thecal sac with mild facet degenerative changes and mild spinal canal stenosis.

AR 12, internal citations omitted.  Plaintiff has failed to explain how the objective "symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d at 1099.  While certainly the MRI of Plaintiff's spine establishes degenerative disc disease and mild spinal canal stenosis, it references only contact of the nerve root rather than compression thereof.

Additionally, there is the requirement of a positive straight-leg raising test in both the sitting and supine positions.  Plaintiff contends that because the consultative examiner did not differentiate between the seated and supine positions, he should be afforded a presumption that the straight leg raising tests were positive in both positions.  (Doc. 14 at 4, n.1.)  The Court is not persuaded.

In his orthopedic examination in April 2009, board certified neurologist Michael Froehler noted: "Straight leg raising is positive on the left with a positive crossed straight leg raise at 45 degrees.  The right leg shows a positive response at 45 degrees."  AR 246.[7]  The language employed is clear: only one type of straight leg raising test was employed, whether it was performed sitting or supine.  In other words, one result is noted for each leg.  The only other evidence of a straight leg raising test is found at page 290 of the administrative record in the Physical Therapy Treatment Plan: "Positive straight leg raise seated."[8]  Ultimately it is Plaintiff's burden to establish he met all requirements of the listing impairment; he simply has not done so here.

---

[7]Following his orthopedic evaluation, Dr. Froehler expressly concluded that Plaintiff retained the functional capacity for sedentary work.  AR 248.

[8]Physical therapists fall under the heading of "other sources" for purposes of the Social Security Regulations: "Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .." SSR 06-03p. Thus, the only acceptable medical source to reference the positive straight leg raising is Dr. Froehler, who clearly tested in a single position, be it supine or sitting.

1    In sum, this Court concludes that substantial evidence supported the ALJ's determination

2    at step three that Plaintiff's impairment was not medically equivalent to Listing 1.04A and that

3    the factual basis for the ALJ' determination is clear. *See Gonzalez v. Sullivan*, 914 F.2d at

4    1200-01. This medical record reveals that Plaintiff suffered neither nerve root compression nor

5    symptoms of compression, such as sensory or reflex loss, nor has Plaintiff exhibited positive

6    straight leg raising in both the sitting and supine positions.

7    ***Plaintiff's Credibility***

8    Next, Plaintiff contends the ALJ failed to provide specific reasons for discrediting his

9    testimony regarding his subjective complaints. (Doc. 11 at 7-11.)

10   A two-step analysis applies at the administrative level when considering a claimant's

11   subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

12   claimant must produce objective medical evidence of an impairment that could reasonably be

13   expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the

14   claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

15   claimant's testimony regarding the severity of his symptoms only if he makes specific findings

16   that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which

17   testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

18   *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack

19   of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

20   impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

21   evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific

22   to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

23   to the individual's statements and reasons for that weight").

24   An ALJ can consider many factors when assessing the claimant's credibility. *See Light v.*

25   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's

26   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

27   testimony by the claimant that appears less than candid, unexplained or inadequately explained

28   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

1   activities, claimant's work record, or the observations of treating and examining physicians.

2   *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).  "An ALJ is not 'required to

3   believe every allegation of disabling pain' or other non-exertional impairment."  *Orn v. Astrue*,

4   495 F.3d at 635 (citation omitted).

5          The first step in assessing Plaintiff's subjective complaints is to determine whether

6   Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

7   alleged.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that

8   Plaintiff had the severe impairment of degenerative disc disease of the lumbosacral spine, status

9   post surgery.  AR 10.  ALJ Cusker found that Plaintiff's "medically determinable impairments

10  could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's

11  statements concerning "the intensity, persistence, and limiting effects of these symptoms are not

12  credible to the extent they are inconsistent with the above residual functional capacity

13  assessment."  AR 14.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d

14  at 1281-1282.

15         "Despite the inability to measure and describe it, pain can have real and severe

16  debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from

17  working."  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  It is possible to suffer disabling

18  pain even where the degree of pain is unsupported by objective medical findings.  *Id*.  "In order

19  to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that

20  decision."  *Id*. (citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)).  The findings

21  must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id*. at 602.

22  However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds

23  true even where the claimant introduces medical evidence showing that he has an ailment

24  reasonably expected to produce some pain."  *Id*. at 603.

25         Specifically here, ALJ Cusker made the following findings:

26                 I find the claimant less than credible.  The claimant testified that he tried
            physical therapy and that it made his condition worse, yet the medical evidence
27          shows a recent initial evaluation and no follow-up for treatment.  The claimant
            testified that he had difficulty concentrating for more than 5 minutes, but the
28          consultative psychiatrist noted he exhibited no difficulties in concentration.  The

                                                    11

1    claimant testified he had difficulty reading because his eyes were bad, yet the
     medical evidence does not reflect this was ever reported to medical examiners.
2    The claimant testified he stopped working in 2008 because he had a surgical
     procedure, yet his earnings record shows no earnings since 2006.
3          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
             The record reveals that the claimant failed to follow-up on
4    recommendations for physical therapy made by treating doctors, which suggests
     that the symptoms may not have been as serious as has been alleged in connection
5    with this application and appeal.  There is evidence that the claimant stopped
     working for reasons not related to the allegedly disabling impairments.  The
6    record reflects no actual treatment for any mental impairment.  The claimant's
     activities of daily living[] are few, because he is homeless.  Thus, he does no
7    cooking or household chores.  However, personal grooming is not a problem,
     except for putting on shoes.  He generally walks 1 block to the park, and lies on
8    the grass, or loiters at the bus stop across the street.  I find the ability to do those
     things consistent with the sedentary residual functional capacity found herein.
9

10   AR 14-15, internal citations omitted.

11          The ALJ provided specific reasons for discrediting Plaintiff's testimony and identified

12   specific testimony or evidence related thereto.  ALJ Cusker noted Plaintiff's failure to follow

13   through with recommended physical therapy, a legitimate consideration.  *See Fair v. Bowen*, 885

14   F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment

15   is a basis to reject claimant's testimony; additionally, failure to follow prescribed treatment can

16   be considered in determining credibility).  The ALJ also considered and identified various

17   inconsistent statements given by Plaintiff.  This too is a proper consideration in assessing

18   credibility.  *See Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638 (inconsistent

19   statements concerning his symptoms or other testimony that appears less than candid).

20   Additionally, the ALJ considered Plaintiff's work record, and more specifically, an inconsistency

21   between Plaintiff's testimony about when he last worked and his actual earning record.  Again,

22   this is a proper consideration in determining credibility.  *Smolen v. Chater*, 80 F.3d at 1284; *Orn

23   v. Astrue*, 495 F.3d at 638 (a claimant's work record is properly considered).  Finally, the ALJ

24   noted Plaintiff's daily activities of living, noting he found them to be consistent with sedentary

25   work.  An ALJ may consider the activities of daily living in assessing credibility.  *Orn v. Astrue*,

26   495 F.3d at 638.  While this Court is not necessarily convinced that Plaintiff's ability to perform

27   personal grooming needs, coupled with his ability to walk a block and either lie on the grass at a

28   nearby park or loiter at a nearby bus stop, are "consistent with the sedentary residual functional

capacity" assigned by the ALJ, any error of this consideration does not require reversal.  That is so because Plaintiff's activities of daily living were not the ALJ's sole consideration.  *See Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

In sum, the ALJ's findings regarding credibility are supported by substantial evidence and are free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Fred Noble.


IT IS SO ORDERED.

**Dated:**   **November 21, 2011**                        **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE